k HARRISON, Judge Pro Tempore.
The plaintiff, the Caddo-Bossier Parishes Port Commission (“the Port”) appeals the trial court’s granting of the exception of no right of action filed by defendant, Arch Chemicals, Inc. (“Arch Chemicals”). Por the following reasons, we affirm.

Facts

The Port owns and operates a water port and industrial park complex along the Red River in Caddo Parish south of Shreveport on Hwy 1. Arch Chemicals, a Virginia corporation doing business in Louisiana, owns a plant along Hwy 1; however, Arch Chemicals is neither a paying tenant nor a customer of the Port.
Prior to the events that gave rise to this suit, the Port complex and Arch Chemicals’ plant were located in Caddo Fire District No. 5. At the time, Arch Chemicals paid an annual ad valorem tax of $894.14 to Fire District No. 5. Arch Chemicals also operated its own on-site fire and EMS facility.
In 1997, the Port’s executive director, John Holt, persuaded the Caddo Parish Commission to remove the Port’s complex and other facilities from the District 5 service area. The territory removed from District 5 included the property owned by Arch Chemicals. Sometime thereafter, the Port bought a seven-acre tract inside Shreveport city limits and built a new fire station, Caddo Fire District No. 20. This was funded by a grant of $1.65 million from the Red River Waterway Commission and an in-kind contribution of $125,000 in EMS equipment from Willis Knighton Hospital of Shreveport. By agreement with the city, the Port paid for the new station | ¡¿o be built and equipped; in exchange, the City assumed an obligation to provide fire and EMS protection *501 to the Port and its tenants.[1] The new fire station is actually operated by the city, although the Port and the city have agreed to split its operating costs.
In an effort to recover a portion of its costs for the operating expenses of the fire station, the Port enacted Ordinance 1 CY 2000, which assessed a “safety tariff’ of 2/10 of 1 percent (0.2%) of the total assets of any business or industry located within the complex.
Although Arch Chemicals is not located within the Port complex, the Port sent a bill, under the guise of this ordinance, to Arch Chemicals for $40,000, which Arch Chemicals refused to pay. The Port responded by filing the instant suit in December 2001, demanding $40,000 plus legal interest from January 4, 2001, until paid.
Arch Chemicals filed an exception of no right of action. The Port filed an opposition, asserting that the tariff was authorized and that an exception of no right of action was not the proper vehicle to attack the tariff.
After a hearing on March 11, 2002, the District Court orally granted the exception. The court concluded that there is no right of action to collect a tariff on immovable property which is outside the Port’s confines and not owned by the Port. La. R.S. 34:3160 C. Regarding the Port’s authority to charge for services it renders, the court stated that the only service rendered |3by the Port was working out the agreement with the city, because the city is the entity actually providing the fire prevention service. Written judgment was rendered on March 19, and the Port has appealed, urging two assignments of error.

Discussion: La. R.S. 3L-S160 and Ordinance 1 CY2000

By its second assignment of error, the Port urges that it has the authority to assess a “safety tariff’ upon Arch Chemicals pursuant to La. R.S. 34:3160 C.[2] As previously noted, the Port alleges that it passed Ordinance 1 CY2000 to recoup its own expenditures and expenses for fire and emergency services protection which the city provides for the Port and its tenants. Arch Chemicals concedes the Port’s authority to collect fees, rates, and tariffs, but contends that the instant assessment is actually an ad valorem tax which is not authorized under La. R.S. 34:3161.
*502 Ad valorem means “according to value”; an ad valorem tax is a tax levied according to the valuation of the property taxed. Acorn v. City of New Orleans, 377 So.2d 1206 (La.1979). It is when the duty is laid in the form of a percentage on the value of the property. Id.
A fire district is a special district created by the legislature under its | ¿Article VI, § 19 powers.[3] Fire protection districts are subdivisions of the state. La. R.S. 40:1492 C. Fire control is a proper function of the State’s police power. Bayou Cane Volunteer Fire Dept. v. Terrebonne Parish Consol. Govt., 548 So.2d 915 (La.1989). Fire control in rural areas, though a matter of local concern, is within the police power of the state. Id. La. R.S. 33:221 provides:
A. If a municipality annexes territory contained in a parochial water, sewer, or fire protection district, hereinafter collectively referred to as special service districts, the municipality and each such special service district are hereby authorized to enter into a contract granting to either the municipality or the special service district the exclusive right to provide service in the annexed area. (Emphasis added).
It is important to determine at the outset whether the $40,000.00 “tariff’ imposed by Ordinance 1 CY2000 pursuant to the Port’s authority under La. R.S. 34:3160 is in reality a tax. The nature of a charge is determined not by its title, but by its incidents, attributes and operational effect; thus, the nature of a charge must be determined by its substance and realities, not its form. Safety Net for Abused Persons v. Segura, 96-1978 (La.4/8/97), 692 So.2d 1038; Gallaspy v. Washington Parish Police Jury, 94-1434 (La.11/30/94), 645 So.2d 1139. A charge that has as its primary purpose the raising of revenue, as opposed to the regulation of public order, is a tax. Safety Net for Abused Persons v. Segura, supra. Moreover, a tax is a charge that is unrelated to or materially exceeds the special benefits |Rconferred upon those assessed. Id.; Audubon Ins. Co. v. Bernard, 434 So.2d 1072 (La.1983).
Although Ordinance 1 CY2000 refers to the charge as a “tariff,” we find that it is in reality an ad valorem tax. Acorn v. City of New Orleans, supra. It is an annual fee, established at 0.2% of the “total assets of any business or industry located within the (Port) complex.” See, Ordinance 1 CY2000, § 2. The $40,000.00 assessed against Arch Chemicals goes to the Port to be used at its discretion, allegedly to recoup its expenditures or operating costs for Fire District 20. Moreover, the charge is not a fee in exchange for services rendered, as the Port contends. After all, the Fire District itself, not the Port, is the entity which actually provides the fire protection and emergency medical services. Instead, this charge is a revenue raising measure and therefore is a tax. Safety Net for Abused Persons v. Segura, supra. As a tax, it is unenforceable because La. R.S. 34:3160 C only contemplates fees, rates, tariffs, or other charges for services rendered.
*503 The Port further contends that because Arch Chemicals never objected to its removal from Fire District 5 to Fire District 20, it effectively consented to the tariff and is therefore obligated to pay the fee. Arch Chemicals responds that it never consented to being removed from Fire District 5 and its failure to do so is irrelevant. International Paper Co. v. Hilton, 96-212 (La.App. 3 Cir. 12/11/96), 685 So.2d 567.
Regarding the issue of whether Arch Chemicals consented to its removal from Fire District 5 to Fire District 20, we note that at the hearing |fion the exception, counsel for the Port claimed that Mr. Holt met with Arch Chemicals’ plant manager at that time, Rich Hamilton,-to discuss the removal and the construction of the new and improved fire station. He also argued that Arch Chemicals effectively received public notice that its property was subject to removal from Fire District 5 via a public hearing, notice published in the newspaper, and the passage of the ordinance to remove the property.[4] We note that no document or other evidence was ever produced to show that Arch Chemicals asked for better fire protection or consented to its removal from the fire district.[5] It is neither a paying tenant nor a contracting partner with the Port. We also note that Mr. Hamilton was merely a manager, not a CEO or a legal representative for Arch Chemicals. Other than the claims made by the Port, there is insufficient evidence that such a meeting even took place, that Arch Chemicals ever consented to its removal from Fire District 5, or that it knew it would be assessed with a $40,000.00 fee. Therefore, we find that Arch Chemical never asked for or consented to being removed from Fire District 5.
Providing fire protection and emergency medical service exceeds the Port’s authority. Fire control is not a proper function of the Port; rather, it is the proper function of the State’s police power. Bayou Cane Volunteer Fire Depart. v. Terrebonne Parish Consol. Govt. supra. Fire districts are subdivisions of the state. Id.; Winn v. City of Kenner, 225 So.2d 662 (La.App. 4 Cir.1969). Therefore, the fire district, not the Port, has the authority |7to regulate fire protection services. The fire district has the proper authority to enforce an ordinance assessing a fine or fee for fire protection services.
In addition, under the explicit terms of La. R.S. 34:3160 C, the Port’s authority to establish fees, rates, tariffs and other charges extends only “within the port area” and not extra-territorially. Arch Chemicals is private property located outside of the Port’s property area conducting business separately from the Port. Moreover, under the terms of the Port’s written agreement, the City of Shreveport agrees to provide fire protection and emergency medical services only to “the Port and its tenants and users at the Port’s complex.” Clearly, Arch Chemicals does not fall under these categories.
We conclude that the Port acted beyond its authority in passing and enforcing Ordinance 1 CY2000. The trial court did not err in concluding that the Port acted outside its territorial scope of powers. This assignment of error is meritless.

*504
No cause of action

By its first assignment of error, the Port urges that Arch Chemicals’ exception of no right of action is an inappropriate vehicle for testing the validity of an ordinance. It argues that the exception is actually one of no cause of action. Citing Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972), the Port contends that the exception of no right of action cannot be invoked to determine whether the right or remedy can be exercised against that defendant, but is only used to determine whether the plaintiff has a legal interest in the subject matter of the |Rlitigation.[6] Therefore, the Port argues, the exception of no right of action is not designed to allow Arch Chemicals to determine whether the Port can charge Arch Chemicals a tariff. It urges that this exception can only test whether the plaintiff has a right to pursue the relief sought in the lawsuit and that the Port is the only party which could possibly have the right to pursue the tariff it imposed.
In response, Arch Chemicals cites Twin Parish Port Com’n v. Berry Bros., Inc., 95-425 (La.App. 3 Cir. 10/4/95), 663 So.2d 257, writ denied, 95-2665 (La.1/5/96), 666 So.2d 288, as the applicable jurisprudence. There, the Third Circuit held that the Port Commission lacked the capacity to proceed in an action enforcing a zoning ordinance which the Port Commission had no constitutional or statutory authority to enact. The court therefore dismissed the action, taking notice of the peremptory exception of no right of action on its own motion, pursuant to La. C.C.P. art. 927 B.
The exceptions of no cause of action and no right of action are two separate and distinct peremptory exceptions. La. C.C. P. art. 927; Wirthman-Tag Const. Co., L.L.C. v. Hotard, 2000-2298 (La.App. 4 Cir. 12/19/01), 804 So.2d 856.
The essential function of an exception of no right of action is to test whether the plaintiff has a real and actual interest in the action. La. C.C.P. art. 927 A(5). Its purpose is to determine whether the plaintiff belongs to |9the class of persons to whom the law grants the cause of action asserted in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n, 94-2015 (La.11/30/94), 646 So.2d 885. It assumes that the petition states a valid cause of action and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. Id.
Unlike the tidal of an exception of no cause of action, evidence is admissible on the trial of exception of no right of action to “support or controvert any of the objections pleaded, when the grounds therefor do not appear from the petition.” La. C.C.P. art. 931; Walker v. State Farm Mutual Auto. Ins. Co., 33,781 (La.App. 2 Cir. 8/25/00), 765 So.2d 1224.
In the instant case, the evidence adduced supports the trial court’s granting of Arch Chemicals’ peremptory exception of no right of action, rather than no cause of action. Because the Port lacked the statutory authority to enact the ordinance which assessed the $40,000.00 “tariff’ against Arch Chemicals, it also lacked the legal interest to enforce it. Louisiana *505 Paddlewheels, supra. This assignment of error has no merit.

Conclusion

For the reasons expressed above, the judgment of the trial court is AFFIRMED. The appellate clerk’s filing fee of $116.50 is assessed to the Caddo-Bossier Parish Port Commission pursuant to La. R.S. 13:5112 A, 4533.
AFFIRMED.
DREW, J., dissents with reasons.

. The “Cooperative Endeavor and Mutual Aid Agreement/Lease between the City of Shreveport and The Caddo-Bossier Parishes Port Commission to Provide Fire Protection at the Port of Shreveport-Bossier,” states specifically:
“Whereas City agrees to provide those named services to the Port and its tenants and users at Port's complex as if they were within the legally defined limits of the City of Shreveport[.]” * * * (Emphasis added).

. La R.S. 34:3160 provides, in pertinent part:
A. The commission shall exercise the powers herein conferred upon it, within the port area consisting of the entire parishes of Caddo and Bossier[.] * * *
C. The commission shall regulate the commerce and traffic within the port area in such a manner as may, in its judgment, be for the best interests of the state. * ® * It shall have authority * * * to charge for the use of all facilities administered by it, and for all services rendered by it; to establish such fees, rates, tariffs or other charges as it may deem fit[.] * * * The commission shall have authority to plan, finance, develop, construct, and/or acquire industrial parks and/or industrial plant buildings within its port area, including sites and other necessary property or appurtenances therefor, and to acquire, construct, develop, improve, operate, maintain, and provide improvements and services necessary therefor, including but not limited to roads, streets, street lighting, bridges, rail facilities, drainage, sewers, sewerage disposal facilities, solid waste disposal facilities, waterworks and other utilities and related properties. * * * (Emphasis added).

. La. Const. Art. VI, § 19 provides:
Subject to and not inconsistent with this constitution, the legislature by general law or by local or special law may create or authorize the creation of special districts, boards, agencies, commissions, and authorities of every type, define their powers, and grant to the special districts, boards, agencies, commissions, and authorities so created such rights, powers, and authorities as it deems proper, including, but not limited to, the power of taxation and the power to incur debt and issue bonds.

. However, at oral argument, counsel for Arch Chemicals denied that a meeting ever took place or that Arch Chemicals was ever apprised of it being removed from Fire District 5.

. In fact, in both the hearing on the exception and at oral argument, counsel for Arch Chemicals informed both courts that it had its own fire fighting crews for fire and emergency protection.

. In brief, the Port also cites the following cases to support its contention that a no right of action was the improper procedural vehicle: Catfish Cabin of Monroe, Inc. v. State Farm Fire & Casualty Co., 35,710 (La.App. 2 Cir. 2/27/02), 811 So.2d 222, Succession of Ewing, 34,413 (La.App. 2 Cir. 3/2/01), 781 So.2d 885, Dinger v. Shea, 96-448 (La.App. 3 Cir. 12/11/96), 685 So.2d 485, Moyers v. Altmann, 594 So.2d 6 (La.App. 3 Cir.1992). However, we find all of these cases to be factually inapposite to the instant case.