STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2018 CA 0881

TURBINE POWERED TECHNOLOGY, LLC

VERSUS

DAVID CROWE, KENNETH BRACCIO, DANIEL FOLEY, GEORGE
JACKSON, KENT ELLSWORTH, ARIZONA TURBINE TECHNOLOGY, INC.,
ADVANCED TURBINE SERVICES, LLC AND TURBINE INTEGRATED
POWER SYSTEMS, LLC

and

2018 CW 0537

TURBINE POWERED TECHNOLOGY, LLC

VERSUS

DAVID CROWE, KENNETH BRACCIO, DANIEL FOLEY, GEORGE
JACKSON, KENT ELLSWORTH, ARIZONA TURBINE TECHNOLOGY, INC.,
ADVANCED TURBINE SERVICES, LLC AND TURBINE INTEGRATED
POWER SYSTEMS, LLC

**Judgment Rendered:    SEP 0 5 2019**

* * * * * *

Appealed from the
Sixteenth Judicial District Court
In and for the Parish of St. Mary
State of Louisiana
Suit Number 130,379

Honorable Gregory P. Aucoin, Presiding

* * * * * *

D.C. Panagiotis                         Counsel for Plaintiff/Appellee
Lafayette, LA                           Turbine Powered Technology, LLC

Holden Hoggatt
Franklin, LA

Adam G. Young
Lafayette, LA

John Alden Meade
New Orleans, LA

S. Patrick Skiles
Morgan City, LA

Thomas T. Townsend
Natchitoches, LA

Counsel for Defendants/Appellants
David Crowe, Kenneth Braccio,
Arizona Turbine Technology, LLC
and Advanced Turbine Services, LLC

* * * * * *

BEFORE: GUIDRY, THERIOT, AND PENZATO, JJ.

**GUIDRY, J.**

Defendants/appellants, David Crowe, Arizona Turbine Technology, Inc., Kenneth Braccio, and Advanced Turbine Services, LLC, appeal from a judgment of the trial court dismissing their motion to dissolve a preliminary injunction granted in favor of plaintiff, Turbine Powered Technology, LLC. For the reasons that follow, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Ted Lee McIntyre, II invented a turbine-powered equipment package for hydraulic fracturing, trademarked as the "Frac Stack Pack," which uses helicopter engines to power frac pumps. McIntyre founded and developed several companies involving turbine-powered technology to use in the oil and gas industry. McIntyre granted one of these companies, MTT Properties, LLC (MTTP), the exclusive right to make, have made, use, offer for sale, and sell the Frac Stack Pack.

Additionally, to capitalize on the value of the Frac Stack Pack and turbine-powered frac technology, McIntyre created Green Field Energy Services, Inc., (Green Field) as a fracking operations company. MTTP and Green Field subsequently formed and became members of Turbine Powered Technology, LLC (TPT) to manufacture the Frac Stack Packs. MTTP assigned the Frac Stack Pack intellectual property to TPT.

On September 22, 2011, TPT and Green Field entered into a Turbine Driven Equipment License Agreement, under which TPT granted Green Field an exclusive license to the Frac Stack Pack trademark and an exclusive license to the Frac Stack Pack technology. Pursuant to this agreement, Green Field received the exclusive right to use, sell, lease, and commercialize the Frac Stack Pack equipment purchased from TPT under the agreement. However, TPT did not transfer

3

ownership of the frac intellectual property. During that time, Danny Foley and George Jackson were employees of Green Field.

TPT subsequently executed a vendor agreement with Advanced Turbine Services, LLC (ATS) on October 4, 2011, to provide additional turbine-powered frac equipment to Green Field. Pursuant to the vendor agreement, ATS agreed to provide TPT with TF40 and TF55 turbine engines and digital engine controls (FADEC and/or IDEC)[1] to be used in the frac equipment. ATS procured the digital engine controls hardware from its subcontractor, Tucson Embedded Systems, Inc. (TES), and resold the hardware to TPT. At the time, Kenneth Braccio owned and managed ATS and David Crowe was the President, Director, and majority shareholder of TES. TES subsequently shipped engine controls directly to TPT. TES executed a mutual non-disclosure agreement with Green Field, effective June 16, 2013. Green Field filed for bankruptcy in October 2013, and the bankruptcy proceedings terminated its exclusive license to TPT's intellectual property in the Frac Stack Pack and derivative technology.

On December 17, 2012, Braccio became an employee of TPT and executed a non-disclosure and confidentiality agreement. Crowe subsequently created Arizona Turbine Technology, LLC, for which Kent Ellsworth was the agent for service of process, and Arizona Turbine Technology, Inc. (AZT) to produce and sell turbine-powered frac equipment. Crowe and Braccio subsequently co-founded Turbine Industrial Power Systems (TIPS). (R. 154) Thereafter, in July 2016, Crowe sold his equity in TES back to the corporation. As part of this agreement, Crowe released all interest in properties and contracts of TES, except Eco-Stim

---

[1] FADEC refers to "Fully Authorized Digital Engine Control" and IDEC refers to "Industrial Digital Engine Control."

4

Energy Solutions, Inc., and TES released all claims of ownership or other interest in or relating to AZTTech.[2]

On November 7, 2016, TPT filed a petition for damages and injunctive relief, naming as defendants Crowe, Braccio, Foley, Jackson, Ellsworth, Arizona Turbine Technology, LLC, AZT, ATS, and TIPS. TPT alleged that defendants have usurped and now claim ownership and legal rights in and to TPT's intellectual property, trade secrets, and derivative products. TPT asserted that defendants have no legitimate legal right in or to TPT's intellectual property or derivative intellectual property, including modifications of turbine engine controls for hydraulic fracturing equipment. TPT alleged that defendants publicly and repeatedly represented themselves to be the owners of TPT's proprietary technology and that AZT publicly placed photos and descriptions of TPT's equipment and accomplishments on its website, which is designed to mislead prospective purchasers into contracting with AZT instead of TPT. TPT alleged that as manager of AZT, Crowe has individually, personally, and unlawfully misappropriated TPT's intellectual property, namely digital engine control modifications developed pursuant to and during the term of the vendor agreement between TPT and ATS.

TPT asserted that defendants AZT, Crowe, and Braccio publicly and falsely represented that they and their affiliates own the frac technology developed by and on behalf of TPT and that the misrepresentations have damaged TPT's past, current, and future business contracts and prospects. TPT alleged that Foley, Jackson, Ellsworth, ATS, TIPS, and Braccio participated in and aided and abetted AZT and Crowe's attempted and actual misappropriation.

TPT asserted claims for declaratory relief; breach of contract for breach of the vendor agreement; bad faith breach of contract; intentional and/or negligent

---

[2] AZTTech is defined in the agreement as AZT, LLC; AZT, Inc., and TIPS.

misrepresentation, detrimental reliance; fraud and fraud in the inducement; violation of Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq.; Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431-1439; criminal liability for business record theft; tortious interference with business relationships; unjust enrichment; breach of fiduciary duty; and injunctive relief in the form of a temporary restraining order, preliminary injunction, and permanent injunction.

TPT also filed an application for a temporary restraining order and for preliminary injunction. TPT asserted that notice would be futile and that security was dispensed with by operation of law, because the vendor agreement and non-disclosure agreement do not include or require applicant to post security and the contracts constitute the law between the parties. The trial court subsequently signed an order granting the temporary restraining order on November 14, 2016. TPT requested service on all named defendants, and a hearing on plaintiff's request for preliminary injunction was set for January 3, 2017. At the January 3, 2017 hearing, following submission of evidence by TPT, the trial court granted TPT's request for a preliminary injunction. Additionally, due to the failure of any of the defendants to make an appearance, TPT moved for a preliminary default against the defendants who had been served.[3] The trial court signed an order granting a preliminary injunction on January 5, 2017, against Ellsworth, Braccio, Arizona Turbine Technology, LLC, AZT, ATS, and TIPS.[4] The trial court also entered a preliminary default against the same defendants and set a hearing to confirm the default judgment for March 6, 2017.

---

[3] According to the record, TPT presented evidence that service had been made on all named defendants except Crowe. Crowe was not served with notice of the petition until after the trial court signed the judgment granting a preliminary injunction.

[4] We note that Foley, Crowe, and Jackson are not named in the order granting TPT's preliminary injunction. Jackson was subsequently dismissed by plaintiff on February 13, 2017; however, in a subsequently filed amended petition, Jackson was again named as a defendant.

Crowe, Braccio, Arizona Turbine Technology, LLC, AZT, and ATS thereafter filed exceptions to plaintiff's petition. However, Ellsworth did not make an appearance on the record. Therefore, following the March 6, 2017 hearing to confirm default judgment, the trial court signed a judgment ordering that a judgment of default be entered against Ellsworth and awarding TPT $30,239,464.00 in damages.

On May 26, 2017, defendants Crowe, Braccio, AZT, ATS, and Foley filed a motion to dissolve preliminary injunction and for damages. Defendants asserted that there is no legal or factual basis to support the preliminary injunction, including that TPT is not at risk of suffering irreparable harm absent the injunction; TPT has an adequate remedy at law; TPT cannot show that it is likely to prevail on the merits; and the requirement of security has not been met. The trial court held a hearing on June 15, 2017, on the defendants' motion to dissolve preliminary injunction. The trial court took the matter under advisement and subsequently signed a judgment on July 17, 2017, denying the motion to dissolve.

While the matter was under advisement, the defendants filed a notice of removal, stating that they had removed the action to the United States District Court for the Western District of Louisiana. TPT filed a motion to remand in the U.S. district court, which was granted on February 23, 2018, and the action was remanded to the Sixteenth Judicial District Court. Defendants filed a motion to correct the record, seeking to have the trial court re-date or re-enter a judgment denying defendants' motion to dissolve because at the time the trial court signed the July 17, 2017 judgment, it had been divested of jurisdiction because the case had been removed to federal court. Because the defendants desired to appeal from the trial court's judgment denying their motion to dissolve, they requested that the trial court cure any technical problems in the July 17, 2017 judgment. The trial court, however, denied defendants' motion.

7

TPT thereafter filed a motion for contempt, claiming that the defendants were in contempt of the trial court's order granting a preliminary injunction in favor of plaintiff. At the contempt hearing, the trial court again ruled on defendants' motion to dissolve preliminary injunction, denying the motion, and subsequently signed a judgment on April 2, 2018, reaffirming its previous judgment denying the motion to dissolve. Crowe, AZT, Braccio, and ATS now appeal from the trial court's judgment. Additionally, Crowe, AZT, Braccio, and ATS have filed an application for supervisory writ of review seeking a stay of the preliminary injunction pending the appeal and expedited assignment of the appeal.

## DISCUSSION

A preliminary injunction is an interlocutory procedural device to preserve the status quo between the parties, pending a trial on the merits. Generally, a party seeking issuance of a preliminary injunction must show that he will suffer irreparable injury, loss, or damage if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits. Marchand v. Texas Brine Company, LLC, 18-0621, pp. 5-6 (La. App. 1st Cir. 1/28/19), __ So. 3d __, __. In making a prima facie showing, the plaintiff is required to offer less proof than is necessary in an ordinary proceeding for permanent injunction. State through the Louisiana State Board of Examiners of Psychologists of the Department of Health and Human Services v. Atterberry, 95-0391, p. 6 (La. App. 1st Cir. 11/9/95), 664 So. 2d 1216, 1220.

"Irreparable injury" is considered to be a loss sustained by an injured party, which cannot be adequately compensated in money damages or for which such damages cannot be measured by a pecuniary standard. Southern Marsh Collection, LLC v. State Traditions, LLC, 17-0459, p. 7 (La. App. 1 Cir. 11/1/17), 2017WL4985217. However, when the plaintiff is alleging that the defendant is

8

acting in direct violation of a prohibitory law, there is no need to prove irreparable harm. Furthermore, a showing of irreparable harm is not required when there is some specific provision of law that otherwise provides such relief. State, through the Louisiana State Board of Examiners of Psychologists of the Department of Health and Human Services, 95-0391 at p. 6, 664 So. 2d at 1220.

Louisiana Code of Civil Procedure article 3607 allows an interested person to move to dissolve a preliminary injunction after providing two days' notice to the adverse party or shorter notice as determined by the court. The sole question to be determined at a hearing to dissolve a preliminary injunction is whether or not, on the facts disclosed, the court should have granted the injunction in the first instance. On a motion to dissolve a preliminary injunction, a trial court should not consider arguments or evidence that could have been raised at the time the preliminary injunction was issued. 43A C.J.S. *Injunctions* § 430 (2019).

In the instant case, Crowe, AZT, Braccio, and ATS assert that because all of TPT's claims against them derive from alleged misappropriation and/or revelation of claimed trade secrets, TPT failed to carry its burden of making a prima facie showing that it is likely to prevail on the merits of its claims because TPT failed to identify a specific trade secret and failed to show irreparable injury. Additionally, Crowe, AZT, Braccio, and ATS assert that the preliminary injunction is invalid because it is overly broad and fails to require a bond.[5]

The Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431 *et. seq.*, prevents one person or business from misappropriating a trade secret developed by another. See Bihm v. Deca Systems, Inc., 16-0356, p. 19 (La. App. 1st Cir. 8/8/17), 226 So. 3d 466, 482. Louisiana Revised Statutes 51:1432 allows a

---

[5] Crowe, AZT, Braccio, and ATS also assert on appeal that the preliminary injunction should be dissolved because it constitutes an impermissible prior restraint on speech. However, this argument was not presented to the trial court, and therefore, it is not properly before this court for consideration on appeal. See Johnson v. Montoya, 13-1951, p. 6 (La. App. 1 Cir. 5/2/14), 145 So. 3d 418, 422.

9

plaintiff to obtain injunctive relief for actual or threatened misappropriation of a trade secret. See B & G Crane Service, L.L.C. v. Duvic, 05-1798, pp. 3-4 (La. App. 1st Cir. 5/5/06), 935 So. 2d 164, 166.

Louisiana Revised Statutes 51:1431(4) defines a "trade secret" as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and

(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

"Misappropriation" is defined in La. R.S. 51:1431(2) as:

(a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) used improper means to acquire knowledge of the trade secret; or

(ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

(aa) derived from or through a person who had utilized improper means to acquire it;
(bb) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(cc) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

The threshold inquiry in every trade secrecy case is whether a legally protectable trade secret exists. Engineered Mechanical Services, Inc. v. Langlois, 464 So. 2d 329, 333 (La. App. 1st Cir. 1984). Whether something constitutes a

10

trade secret is a question of fact. <u>Engineered Mechanical Services, Inc.</u>, 464 So. 2d at 333.

If the information is found in fact to be a protectable trade secret, it then becomes necessary to determine whether an express or implied contractual or confidential relationship existed between the parties, which obligates them not to use or disclose the secret information. <u>Engineered Mechanical Services, Inc.</u>, 464 So. 2d at 333. Finally, the plaintiff must prove the party receiving the secret information wrongfully breached its duty of trust or confidence by disclosing or using the information to the injury of the plaintiff. <u>B & G Crane Service, L.L.C.</u>, 05-1798 at p. 4, 935 So. 2d at 167.

In its petition seeking a preliminary injunction, TPT asserted that the trade secrets at issue are the "design, manufacture, and controls for TPT's turbine-powered hydraulic-fracturing pumping equipment … includ[ing] but … not limited to formulas, patterns, compilations, programs, methods, techniques and processes invented and developed by TPT to control turbine engines used in the hydraulic fracturing business for stimulation of oil and gas wells." At the unopposed January 3, 2017 hearing on its request for a preliminary injunction, TPT submitted several documentary exhibits establishing that TPT and its member, Green Field, had entered into several agreements related to manufacturing T55 and T40 engines with digital controls for use in the oil and gas industry. TPT entered into a vendor agreement with ATS to provide TPT with TF40 and TF55 turbine engines and digital engine controls (FADEC and/or IDEC) to be used in the frac equipment. The invoices admitted into evidence confirm that ATS acquired these controls from TES. According to the terms of the vendor agreement, TPT shall own the intellectual property for all changes or modifications paid for and/or funded by TPT under the agreement. However, the express terms of the agreement do not state that it applies to anyone other than TPT and ATS.

11

As a result of its work with TPT, TES executed a TES Mutual Non-Disclosure Agreement with Green Field, who held the license to the frac technology, whereby both parties agreed to maintain the confidentiality of their respective proprietary information, including trade secrets, product design information, technical information, source codes, etc. Braccio, who subsequently became an employee of TPT, also executed a confidentiality agreement with TPT.

TPT also submitted website printouts from MTTP and TPT regarding the Frac Stack Pack units and technology and printouts from Eco-Stim and AZT depicting similar technology. Additionally, TPT submitted a copy of the lawsuit it filed against Energy New Technologies International Corporation for violating a confidentiality agreement it had with TPT regarding the Frac Stack Pack technology and a consent judgment rendered pursuant thereto. Finally, TPT submitted an assignment from TES to TPT of a fifty-one percent interest in US Patent No. 9,429,078 for a multi-compatible digital engine controller, for which Crowe is listed as an inventor and TES is listed as the applicant.

From our review of the evidence submitted by TPT in support of its application for preliminary injunction, we find that while TPT makes broad assertions in its petition regarding its alleged trade secrets, TPT failed to present any testimony or other evidence clarifying these broad assertions. See e.g., Engineered Mechanical Services, Inc. v. Langlois, 464 So. 2d 329, 335-337 (La. App. 1st Cir. 1984). None of the aforementioned evidence sheds any light as to the content of any alleged trade secrets alleged by TPT. Furthermore, to the extent that the information contained in US Patent No. 9,429,078 constitutes a portion of any alleged trade secret, because the information is contained in a patent, it is "generally known to ... other persons who can obtain economic value from its ...

use" and as such, cannot form the basis of any trade secret claim.[6] See La. R.S. 51:1431(4)(a); See Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C., 637 F. 3d 604, 611-612 (5th Cir. 2011).

At the hearing on defendants' motion to dissolve preliminary injunction, the trial court acknowledged that it was still unsure as to what intellectual property was at issue in this case, even after it had already granted TPT's preliminary injunction, commenting that "[TPT is] just trying to protect some intellectual properties, which I do not know what those intellectual properties are." Additionally, McIntyre was unable to give a consistent answer regarding the source of his trade secret claims, providing multiple, differing answers as to what specifically constitutes the alleged trade secrets of TPT.

As such, considering the failure of TPT to make a prima facie showing that it will prevail on the merits of any of its claims related to its alleged trade secrets, we find that the trial court erred in dismissing defendants' motion to dissolve preliminary injunction. Additionally, due to our decision on appeal, we deny the writ application filed by Crowe, AZT, Braccio, and ATS.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court dismissing the motion to dissolve preliminary injunction and remand this matter to the trial court for further proceedings consistent with this opinion. Additionally, we deny the writ application filed by David Crowe, Advanced Turbine Technology, Inc., Kenneth Braccio, and Arizona Turbine Services, LLC. All costs of this appeal are assessed to Turbine Powered Technology, LLC.

**REVERSED AND REMANDED; WRIT DENIED.**

---

[6] TPT asserted at the hearing on the motion to dissolve and in brief on appeal that Crowe improperly filed the patent application after misappropriating their trade secrets. However, this allegation was not contained in TPT's petition or application seeking a preliminary injunction and as such, could not form a basis for the trial court granting the preliminary injunction.

13